UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Doris Lorraine Gleaton, ) | Civil Action No.: 9:17-cv-00736-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Doris Lorraine Gleaton has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB"). This matter is now before the Court for review of the Report and Recommendation ("R & R") of United States Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rules 73.02(B)(2)(a) and 83.VII.02 (D.S.C.). [ECF # 22]. The Magistrate Judge recommends that the Court affirm the decision of the Commissioner. [ECF #22, p. 30]. This Court has thoroughly reviewed the record in this case and now issues the following Order.

**Statement of Facts and Procedural History**

This Court is tasked with reviewing the denial of Plaintiff's application for disability benefits. Plaintiff applied for disability insurance benefits ("DIB") on May 4, 2015, alleging a disability date of January 28, 2013 due to fibromyalgia, insomnia, mood swings, vision problems, rheumatoid arthritis, and problems with her breast and heart. [ECF #19, p. 4]. The Magistrate Judge adequately set forth Plaintiff's medical history in the R&R. [ECF #22, pp. 3-11]. Briefly stated, medical records dating as far back as 2012 indicate Plaintiff received treatment for numbness and tingling in her legs, and that she had myofascial tender points above and below the waist. [ECF #10-11, Ex. 9F]. Approximately one

year after Plaintiff's alleged disability date, Dr. Michael J. Huggins treated Plaintiff for anxiety and depression. [ECF #12-6, Ex. 28F]. Plaintiff's treatment notes reflect that she was diagnosed with fibromyalgia and rheumatoid arthritis, though at least one treatment note indicates that Plaintiff's rheumatologist was not sure Plaintiff actually had fibromyalgia. [ECF #11-2, Ex. 11F]. Plaintiff continually reported symptoms related to fibromyalgia in her treatment records. Plaintiff underwent a left total knee arthroplasty on April 9, 2015 and a right total knee replacement on September 17, 2015. [ECF #10-11, Ex. 9F; ECF #12-1, Ex. 20F]. She also underwent cataract surgery on her left eye on July 9, 2015 and her right eye on August 27, 2015. [ECF #12-1, Ex. 20F]. Her records also indicate Plaintiff complained of generalized pain, including back pain, hypertension, dry eye and eye irritation, and vertigo. Plaintiff's records also indicate mental issues related to anxiety and depression.

Plaintiff applied for disability on May 4, 2015. Plaintiff's claim was denied initially and upon reconsideration. After she requested and was granted a hearing, the ALJ denied her claim on May 17, 2016. Plaintiff's request for a review by the Appeals Council was eventually denied,[1] making the findings and determination of the ALJ the final decision of the Commissioner. The ALJ reviewed all of the medical history in the record, as well as Plaintiff's testimony at the hearing. The ALJ subsequently came up with several findings.

The ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> (2) The claimant engaged in substantial gainful activity during the following periods: March 2013 through April 2014 (20 C.F.R. 404.1520(b) and 404.1571 *et seq.*).

---

[1] The Appeals Council initially denied her request for review on October 18, 2016. After providing Plaintiff additional time to supply information, the Appeals Council against denied her request for review on January 13, 2017.

(3) However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

(4) The claimant has the following severe impairments: obesity, hypertension, osteoarthritis in right foot, fibromyalgia, degenerative joint disease of the knees, status-post total knee arthroplasty and degenerative joint disease of the right shoulder (20 C.F.R. 404.1520©).

(5) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

(6) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except no ropes, ladders, or scaffolds, no crawling and occasional other postural.[2] She would be limited to no more than occasional exposure to extremes of temperatures, no direct exposure to vibrations or unprotected heights and no exposure to excessive humidity or wetness.

(7) The claimant is capable of performing past relevant work as a facility assistant manager, transportation assistant and greeter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

(8) The claimant has not been under a disability, as defined in the Social Security Act, from January 28, 2013 through the date of this decision (20 C.F.R. 404.1520(f)).

[ECF #10-2, pp. 53-59].

On March 17, 2017, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #19, ECF #20], and the Magistrate

---

[2]The RFC is written as provided for in the decision dated May 17, 2016.

Judge issued a Report and Recommendation ("R&R") on May 3, 2018, recommending that the Commissioner's decision be affirmed [ECF #22]. The Magistrate Judge determined that the ALJ properly addressed the relevant medical findings, as well as considered Plaintiff's testimony in determining that the ALJ's decision is supported by substantial evidence. [ECF #22, p. 29-30]. Plaintiff filed objections on May 17, 2018. [ECF #23]. Plaintiff objects to the recommendation of the Magistrate Judge based on the following arguments: (1) the ALJ failed to perform a proper analysis of the claimant's ability to perform past relevant work; (2) the ALJ did not adequately evaluate her residual functional capacity ("RFC"); and (3) the ALJ did not consider Plaintiff's subjective complaints. Defendant responded to these objections on May 30, 2018. [ECF #26].

**Standard of Review**

I. **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir.

4

2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

5

**Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) &

416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing past relevant work;[4] and (5) whether the impairment prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

7

bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) (regarding burdens of proof).

## Analysis

### I.     Plaintiff's Ability to Perform Past Relevant Work

Plaintiff's first objection is that the analysis of her ability to perform past relevant work does not comply with SSR 82-62, C.F.R. § 404.1520 and the relevant case law. SSR 82-62 provides an explanation for determining a claimant's ability to perform past relevant work. A determination that a claimant has the capacity to perform past relevant work must include the following findings of facts: (1) a finding of fact as to the individual's residual functional capacity ("RFC"); (2) A finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding a fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62, 1982 WL 31386, at *4 (Jan. 1, 1982). In her objections, Plaintiff argues that both the ALJ and the Magistrate Judge overlooked the fact that she could not return to her past relevant work because those jobs demanded prolonged computer use, which is not possible with her health complications, particularly her

dry eye impairment.

Plaintiff bears the burden of proof to establish that she is unable to perform her past relevant work. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Plaintiff contends that the ALJ failed to consider her issues, particularly with dry eyes and whether she would be able to meet the requirements of her past work. Here, Plaintiff continues to rely upon her own testimony that she could not return to work due to her dry eyes. Plaintiff references places within her medical records noting that she was "regularly diagnosed with dry eyes," but these notes also indicate these ailments were being treated with the use of artificial tears. Nonetheless, contrary to Plaintiff's argument that the ALJ did not consider her testimony about her difficulty with dry eyes, the ALJ specifically noted that Plaintiff testified she missed a lot of work, and that, among other ailments, she suffers from dry eyes and underwent eye surgery for cataracts. Within the ALJ's decision, he considered Plaintiff's issues with dry eyes, but he ultimately determined it did not preclude her from performing her past relevant work. The ALJ noted that Plaintiff shopped on the computer and played games on the computer Therefore, the decision reflects that the ALJ did consider Plaintiff's statements regarding the issues with her eyes and her use of the computer, but he felt this information did not translate to an inability to meet the requirements of her past relevant work.

The ALJ determined Plaintiff maintained the RFC to perform a range of sedentary work, which included certain limitations. Plaintiff's past work included a facilities assistant manager, a transportation assistant and a retail greeter. At the hearing, the vocational expert testified that Plaintiff was capable of performing the past relevant work of two of her three positions.[5] The vocational expert and the ALJ

---

[5] The vocational expert identified these positions as daycare director, sales attendant and accounting clerk. The only position that did not comport with the RFC is the job identified as the "sales attendant" in the Dictionary of Occupational Titles, which was Plaintiff's past job of retail greeter.

discussed the demands of those positions, and thereafter in his decision, the ALJ determined that the claimant could perform her past relevant work, as these positions did not exceed the demands of her RFC. Though very succinct, the ALJ stated in his decision that Plaintiff could perform this work after comparing the RFC with the physical and mental demands of the these positions. This Court agrees with the Magistrate Judge that the failure to specifically state that the information regarding past relevant work was testified by the vocational expert is harmless error. This Court therefore finds substantial evidence supports the ALJ's findings with respect to Plaintiff's ability to perform past relevant work, and that the analysis comports with SSR 82-62 and C.F.R. § 404.1520. This objection is therefore overruled.

## II.     Evaluation of Plaintiff's RFC

Plaintiff raises an objection to the Magistrate Judge's finding that the ALJ properly considered her limitations due to fibromyalgia in evaluating her RFC. Plaintiff argues that the ALJ's analysis of this condition does not comply with Social Security Ruling 12-2p. Plaintiff's specific argument is that the ALJ did not understand the nature of such a diagnosis, specifically the "waxing and waning" nature of this disease, which is specifically addressed in SSR 12-2p. Moreover, Plaintiff argues that the ALJ's reliance upon a psychiatrist's opinion that she could perform basic activities of daily living, relate to others, and complete simple tasks is in error because these findings do not relate to her diagnosis of fibromyalgia, osteoarthritis or fatigue.

The RFC is a determination by the ALJ, based on all relevant medical and non-medical evidence, of what a claimant can still do despite her impairments. *See* 20 C.F.R. §§ 404.1520; SSR 96-8p, 1996 WL 374184 (July 2, 1996). Where as here, if more than one impairment is present, the ALJ must consider all of these medically determinable impairments, including those which are not "severe," when

determining the RFC. *See* 20 C.F.R. §§ 404.1545. The ALJ determined that Plaintiff had several severe impairments, including fibromyalgia, however, he also determined that the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. As noted by the Magistrate Judge, none of Plaintiff's treating or examining physicians placed physical limitations on her ability to work such that she would be precluded from the performance of a reduced range of sedentary work. This is true despite the fact that Plaintiff had surgery on her knees, as well as sought treatment for degenerative joint disease.

While there is no medical listing for fibromyalgia, Titles II and XVI of Social Security Ruling 12-2p provide guidance in deciding whether a person has a medically determinable impairment. SSR 12-2p defines fibromyalgia as follows: "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that persisted for at least 3 months." SSR 12-2p provides further guidance as to how a Commissioner should consider fibromyalgia in the five-step sequential evaluation process to determine disability. Specifically, in determining the RFC, the Ruling provides, "[f]or a person with FM [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p. This Ruling also sets forth two sets of criteria, based either upon the 1990 American College of Rheumatology (ACR) Criteria for Classification of Fibromyalgia or the 2010 Preliminary Diagnostic Criteria, for determining whether a person has a medically determinable impairment of fibromyalgia. *See* SSR 12-2p, 2012 WL 3104869, at *2-*3. The Sixth Circuit has noted that the absence of objective medical evidence to substantiate a fibromyalgia diagnosis is essentially irrelevant. *Kalmbach v. Commissioner*, 409 Fed. Appx. 852, 864 (6th Cir. 2011). Numerous other courts have recognized the subjective nature of fibromyalgia symptoms. *Dowell v. Colvin*, No. 1:12CV1006,

2015 WL 1524767, at *3 (M.D.N.C. April 2, 2015).

In reviewing the ALJ's decision, the ALJ explained the significant of claimant's subjective symptoms of fibromyalgia . As pointed out by the Magistrate Judge, the ALJ set forth the requisite analysis in SSR 12-2p and explained that he considered this regulation in determining that Plaintiff did not have a combination of impairments that met or medically equaled the severity of a listed impairment. In supporting the RFC determination, the ALJ explained that the record shows Plaintiff had been prescribed Cymbalta and Neurontin which were relatively effective in controlling her symptoms, and that her treating physician noted that her fibromyalgia was well-controlled. As to her subjective symptoms, the ALJ noted that her fatigue improved with the use of a Continuous Positive Airway Pressure ("CPAP") machine. [ECF #10-2, p. 58].[6] Plaintiff asserts that the ALJ ignored medical records that would support her allegations regarding her symptoms. Other than Plaintiff's own allegation that the ALJ only considered one medical record, the decision otherwise reflects the fact that he considered the entire medical record as a whole. As to whether the ALJ considered Plaintiff's testimony regarding her symptoms, the ALJ noted within the decision Plaintiff's statements regarding experiencing constant pain. As to the medical opinions referenced in the decision, the ALJ's RFC determination that she could perform sedentary work with some limitations is supported by the findings of the state agency medical consultants, as indicated by the ALJ. While Plaintiff argues that reliance upon the opinion of a psychiatrist, who apparently treated Plaintiff for mental impairments, in determining the RFC is misplaced, this was not the only evidence relied upon by the ALJ in making his RFC determination.

It is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ's decision reflects the fact that he adequately

---

[6] As indicated in the R&R, at least one physician suspected that Plaintiff's complaints of fatigue and body pain were related to an undiagnosed osteoarthritis disorder. [ECF #12-1, Ex. 20F].

considered her fibromyalgia symptoms in making an RFC determination. After reviewing the record, this Court does not find any reversible error with respect to the ALJ's determination as to Plaintiff's RFC because the determination is supported by substantial evidence within the record. This objection is overruled.

### III. Plaintiff's Subjective Complaints

Finally, Plaintiff objects to the R&R on the ground that the ALJ failed to properly consider certain evidence in evaluating Plaintiff's subjective complaints. The Magistrate Judge found that the ALJ followed the proper process in evaluating her subjective complaints and that a review of the objective medical evidence and Plaintiff's testimony supports such a finding. Plaintiff argues that the ALJ did not consider her activities of daily living, long work history, problems with fatigue and her unresolved knee pain in finding her less than credible. Specifically, Plaintiff asserts that the ALJ simply gives a list of her daily activities, while ignoring Plaintiff's testimony qualifying those activities by limiting the circumstances under which she can perform certain activities.

In Social Security Ruling 16-3p, the Social Security Administration explains that the intensity and persistence of a claimant's symptoms should be evaluated to determine whether these symptoms limit the ability to perform work-related activities.[7] In evaluating a claimant's subjective symptoms, an ALJ must follows a two-step process: (1) determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms; and (2) evaluate the intensity and persistence of a claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. SSR 16-3p; *see Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (explaining the two-step process in determining whether a person is disabled by pain or

---

[7] SSR 96-7p was rescinded and superceded by SSR 16-3p, which became effective on March 28, 2016.

13

other symptoms). In following this process, an adjudicator should not evaluate a claimant's symptoms based solely on objective medical evidence, unless that evidence supports a finding that an individual is disabled. SSR 16-3p, 2016 WL 1119029, at *5 (March 16, 2016). If an ALJ cannot make a disability determination based solely on medical evidence, an individual's symptoms should be evaluated based on the evidence available in the record, including medical sources, statements from the individual, and any other source with information concerning the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *5. Factors relevant to the evaluation of a claimant's symptoms include daily activities, frequency of pain or other symptoms, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, treatment other than medication used to alleviate pain or other symptoms, other measures used to alleviate pain or other symptoms, and any other factors concerning a claimant's functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *7.

Here, as observed by the Magistrate Judge, the ALJ set forth and followed the two-step process to analyze Plaintiff's subjective symptoms. He specifically considered the claimant's statements at the hearing regarding her symptoms, as well as considered those statements and the evidence found within the medical record, and considered the opinion evidence of the medical sources, to determine whether the RFC was appropriate. The ALJ provided specific examples from the record to support his conclusion that Plaintiff was not precluded from performing a range of sedentary work, including objective medical examinations and imaging results, her follow-up examinations after knee surgery, medical notes indicating her functional mobility was not consistent with her reported pain, and the fact that her fibromyalgia appears to be under control with prescribed medication. As far as Plaintiff's activities of daily living, the ALJ stated that Plaintiff noted having some difficulty with personal care, but he

determined that she was otherwise able to perform activities such as shopping, preparing meals, laundry, and cleaning the home. The ALJ also stated that Plaintiff's own description of activities of daily living are not as limited as one would expect given her complaints regarding disabling symptoms and limitations. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (considering the ALJ's findings that the fact that a claimant engaged in a variety of activities was inconsistent with complaints of debilitating pain); *see generally Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (finding that an ALJ correctly applied the law in determining that a claimant's reported daily activities undermined subjective complaints).

Contrary to Plaintiff's objection, it does appear that the ALJ considered a number of factors in analyzing Plaintiff's subjective complaints. Beyond Plaintiff's assertion that the ALJ ignored "qualifying testimony" about her ability to perform activities of daily living, the ALJ adequately explained his assessment of Plaintiff's activities of daily living as it related to her own testimony regarding complaints of pain preventing her from performing these activities at times. In assessing Plaintiff's statements regarding her symptoms, under its scope of review, the Court cannot make credibility determinations but may review the ALJ's decision to determine whether substantial evidence supports the ALJ's credibility assessment. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). This Court is not tasked with the position of re-weighing evidence to make a new credibility determination. *See Hancock v. Astrue*, 667 F.3d 470, 471 (4th Cir. 2012) ("[i]n reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determination, or substitute our judgment for that of the [ALJ]") (citing *Johnson*, 434 F.3d at 653). This Court is satisfied that the ALJ considered Plaintiff's daily activities and compared those activities to her own self-reported allegations of limitations as to those activities. Accordingly, this Court finds that the analysis of

15

Plaintiff's subjective complaints is supported by substantial evidence and were reached through application of the correct legal standard. This objection is overruled.

## Conclusion

The Court has thoroughly considered the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections, and the applicable law. For the above reasons, the Court **ADOPTS** the Magistrate Judge's recommendation to affirm the Commissioner's decision. [ECF #22]. The Commissioner's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

Florence, South Carolina  
July 30, 2018

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge